IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALFRED E. McCAULEY,         )
                            )
            Plaintiff,      )
                            )
       v.                   )    1:13CV534
                            )
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security, )
                            )
            Defendant.      )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Alfred E. McCauley, seeks review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits ("DIB"). The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 8, 10, 14.) For reasons discussed below, it is recommended that Plaintiff's motion for judgment reversing the Commissioner be denied, Defendant's motion for judgment on the pleadings be granted, and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on or about June 2, 2010, alleging a disability onset date of November 1, 2006. (Tr. 123-26.)[1] His application was denied initially and upon

---

[1] Transcript citations refer to the sealed administrative record which was filed with Defendant's Answer. (Docket Entry 8.)

1

reconsideration. (Tr. 65-68; 72-75.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 76-77.) Plaintiff and his attorney appeared at the hearing on April 16, 2012. (Tr. 35-46.) A decision was issued on May 14, 2012, upholding the denial of Plaintiff's application for DIB. (Tr. 21-27.) On April 23, 2013, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 7-9.)

## II. STANDARD OF REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether Plaintiff is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). In rendering his disability determination,

2

the ALJ made the following findings later adopted by Defendant:

1. The claimant last met the insured status requirements of the Social Security Act [the "Act"] on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of November 19, 2009 through his date last insured [DLI] of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant has the following severe impairments: chronic low back pain, herniated disc, and herniated disc in neck and left knee (20 CFR 404.1520(c)).

    . . . .

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    . . . .

5. After careful consideration of the entire record, the undersigned finds that, through the [DLI], the claimant had the residual functional capacity [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b). The claimant had the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, as well as sit, stand and walk 6 hours in an 8-hour workday. The claimant should avoid climbing and concentrated exposure to heights and hazardous machinery.

(Tr. 23-24.)

In light of the above findings regarding Plaintiff's RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work as a dishwasher. (Tr. 26.) The ALJ also found that Plaintiff, who was 47 years old on the DLI, met the definition of a younger individual. (*Id.* (citing 20 C.F.R. § 404.1563)). Finally, the ALJ noted that transferability of

3

job skills was not an issue in the case because Plaintiff's past relevant work was unskilled. (*Id.*) Based upon Plaintiff's age, education, work experience, and his RFC, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed" through the DLI. (*Id.* (citing 20 C.F.R. §§ 404.1569 and 404.1569(a))). Accordingly, the ALJ concluded that Plaintiff was not under a "disability," as defined in the Act, from his amended alleged onset date through December 31, 2010, the DLI. (Tr. 27.)

## IV. ANALYSIS

Plaintiff contends that the Commissioner erred in determining that he was not disabled for purposes of the Act. (Docket Entry 11). Plaintiff raises three arguments. First, Plaintiff contends that the ALJ "failed to properly determine the weight to be given [to] the opinions [of] both Dr. Pool and Dr. Lucas." (*Id.* at 6.) Second, Plaintiff argues that the ALJ erred in limiting his consideration of Plaintiff's disability to only the period prior to the date last insured. (*Id.* at 6-7.) Lastly, he contends that the ALJ failed to explain why Plaintiff did not meet Listing 1.02A. (*Id.* at 8-9.)

### A. Opinions of Dr. Henry Pool and Dr. Michael Lucas

Plaintiff argues that the ALJ failed to determine the weight to be given to treating physicians Henry Pool, M.D. ("Dr. Pool") and Michael Lucas, M.D. ("Dr. Lucas"). (*Id.* at 3-5.) Plaintiff asserts this argument by comparing the ALJ's decision to give Dr. Lucas' opinion "significant" weight to the ALJ's decision to give Dr. Pool "little weight" when both physicians failed to indicate Plaintiff's ability to lift, carry, sit, stand or walk. (*Id.* at 3.) Plaintiff further argues that both Dr. Pool and Dr. Lucas' opinions are "inconsistent with each other" such

4

that neither should receive controlling weight; as such, the ALJ should have engaged in further consideration to determine the weight to be given to each doctor. (*Id.* at 5.) Plaintiff's argument fails.

The "treating physician rule," 20 C.F.R. § 404.1527(c)(2), generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2).[2] An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and

---

[2] SSR 96–2p provides that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). However, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" *Id.* SSR 96-5p provides further that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *1. However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

5

Case 1:13-cv-00534-JAB-JLW   Document 16   Filed 06/24/16   Page 5 of 13

laboratory findings as well as consistent with the other substantial evidence in the case record. *Id.* § 404.1527(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Here, substantial evidence supports the weight given to each of Plaintiff's treating physicians. The ALJ explicitly concluded the following regarding Dr. Lucas' treatment of Plaintiff: "Significant weight is . . . given to the opinion of claimant's treating physician, Dr. Lucas, who indicated in August, November, and December 2010, that the claimant had no contraindication to gainful employment and no work restrictions." (Tr. 25.) The ALJ's decision is supported by treatment records completed by Dr. Lucas during the time he provided services to Plaintiff and is consistent with other substantial evidence in the record, including Plaintiff's own testimony of his ability to care for his personal needs, care for his cats, and get around on a scooter with no difficulty. (*See* Tr. 43-44, 219-220, 223-24.) The ALJ also concluded the following regarding Dr. Pool's treatment of Plaintiff:

> Little weight is given to the opinion of Dr. Pool, who completed a Medical Statement on February 25, 2011. Dr. Pool indicated that the claimant suffered from moderate chronic low back pain, but that he was unable to perform any work activity. Little weight is afforded [to] this assessment as Dr. Pool did not indicate the claimant's ability to lift, carry, sit, stand, or walk. Additionally, his report was incomplete (Exhibit B-6F).

(Tr. 25-26.) In making this conclusion, the ALJ specifically referenced an incomplete

6

checklist opinion in which Dr. Pool summarily concludes that Plaintiff "is unable to work in any capacity." (Tr. 230-36.)

In his argument, Plaintiff attempts to measure the ALJ's assessment of Dr. Pool's opinion against the ALJ's assessment of Dr. Lucas' opinion. However, this comparison is to no avail. Dr. Pool's conclusion that Plaintiff cannot work concerns an issue reserved for the Commissioner. SSR 96-5P, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."); *see also Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' . . . , involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight."). Additionally, checklist opinions, even fully completed, are often entitled to relatively little weight. *See McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *6 (E.D.N.C. Aug. 23, 2012) ("form reports . . . are arguably entitled to little weight due to the lack of explanation"); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 & n.2 (2d Cir. 2004) (standardized form opinions are "only marginally useful" and not particularly "informative"); *Berrios Lopez v. Sec'y of Health & Human Servs.*, 951 F.2d 427, 431 (1st Cir. 1991) (checklist opinions disfavored); *Frey v. Bowen*, 816 F. 2d 508, 515 (10th Cir. 1987) (checklist forms, "unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence"); *see also* 20 C.F.R. § 1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion . . . the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that

7

opinion."). Because the ALJ's consideration of Plaintiff's treating physicians is supported by substantial evidence, Plaintiff's argument fails.

**B. Evidence Post-DLI**

Next Plaintiff argues that the ALJ failed to consider evidence created after Plaintiff's DLI.[3] (Docket Entry 11 at 6-7.) In support of his argument, Plaintiff relies upon *Bird v. Comm'r of Soc. Sec. Admin.*, which held that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." 699 F.3d 337, 340 (4th Cir. 2012) (citation omitted). The Court further stated that "evidence created after a claimant's DLI, which permits an inference of linkage between the claimant's post–DLI state of health and her pre–DLI condition, could be the most cogent proof of a claimant's pre–DLI disability." *Id.* at 341 (internal quotations and citations omitted). Thus, "retrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms." *Id.* (internal quotations and citations omitted); *see also Powers v. Colvin*, No. 1:14CV272, 2015 WL 213189, at *4 (M.D.N.C. Jan. 14, 2015) (unpublished) (examining post-DLI analysis in *Bird*).

Here, Plaintiff's DLI was December 31, 2010. (Tr. 21.) The ALJ considered and discussed evidence after that date, including the evaluations of Dr. Pool in 2011 (Tr. 25-26), the information regarding Plaintiff's surgeries in 2011 and 2012 (Tr. 25), and other treatment

---

[3] "To qualify for DIB, [Plaintiff] must prove that [he] became disabled prior to the expiration of h[is] insured status." *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (citations omitted).

8

records from 2011 (Tr. 25). The ALJ also referenced Plaintiff's absence of medical attention following his surgery in 2012 (Tr. 26).[4] Because the ALJ properly considered evidence post-DLI, Plaintiff's claim is without merit. *See Joe v. Colvin*, No. 8:14-CV-01221-JDA, 2015 WL 4878886, at *14 (D.S.C. Aug. 14, 2015) (unpublished) ("[C]ontrary to Plaintiff's assertions, the ALJ expressly considered the evidence dated after Plaintiff's DLI . . . [Thus] Plaintiff's argument . . . is without merit.").

### C. Listing 1.02A

Lastly, Plaintiff argues that the ALJ failed to explain why Plaintiff did not meet Listing 1.02A.[5] (Docket Entry 9.) Step three of the sequential analysis requires the ALJ to

---

[4] At the time of the hearing, the post-2012 surgery notes were not available. Upon review by the Appeals Council, medical evidence regarding post-2012 surgery evaluations were provided by Plaintiff's counsel and became part of the record. (Tr. 10, 283, 285.) The progress notes showed improvement in back and lower extremity pain.

[5] In this argument, Plaintiff also incorporates a challenge to the ALJ's findings at step two. (Docket Entry 11 at 8.) Referencing the ALJ's finding of "low back pain" as a severe impairment (*see* Tr. 23), Plaintiff asserts that pain is a symptom and not an impairment. (Docket Entry 11 at 8.) "A severe impairment is one that 'significantly limits [a claimant's] physical or mental ability to do basic work activities.'" *Garofolo v. Colvin*, No. 1:14CV761, 2016 WL 1092650, at *2 (M.D.N.C. Mar. 21, 2016) (citing 20 C.F.R. § 416.920(c)). Low back pain is frequently noted as a severe impairment. *See Worley v. Colvin*, No. 2:14CV00020, 2016 WL 1248976, at *1 (W.D. Va. Mar. 29, 2016) (unpublished) ("The ALJ found that the medical evidence established that [claimant] suffered from severe impairments, namely chronic low back pain with lower extremity weakness . . . ."); *Brewer v. Colvin*, No. 5:13-CV-705-BO, 2015 WL 450901, at *2 (E.D.N.C. Feb. 3, 2015) (unpublished) ("Plaintiff's obesity . . . low back pain were considered severe impairments . . . ."); *McMurry v. Colvin*, No. CIV.A. 8:12-01792, 2013 WL 5288076, at *1 (D.S.C. Sept. 17, 2013) (unpublished) ("[T]he ALJ found that [claimant] suffered from several severe impairments—hypopituitary syndrome, fatigue . . . low back pain . . . —as well as a number of non-severe impairments."); *Tynes v. Comm'r of Soc. Sec.*, No. 4:10CV146, 2011 WL 6981194, at *3 (E.D. Va. Dec. 12, 2011), *report and recommendation adopted*, No. 4:10CV146, 2012 WL 78398 (E.D. Va. Jan. 10, 2012), *aff'd*, 474 F. App'x 174 (4th Cir. 2012) ("At step two, the ALJ found that [claimant] had the following severe impairments: osteopathy of the left glenohumeral (shoulder) joint, low back pain, and migraine headaches."); *Hornick v. Barnhart*, No. CIV.A. 505CV00053, 2006 WL 759666, at *2 (W.D. Va. Jan. 26, 2006) (unpublished) ("The ALJ's step-two findings were . . . low back pain, hepatitis-C, and 'questionable' autoimmune hepatitis . . . ."). Plaintiff does not argue that any other

9

determine whether a claimant's impairment(s) meets or equals the medical criteria of 20 C.F.R., Pt. 404, Subpt. P, App. 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. 20 C.F.R. § 404.1520(d); *see also Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (internal quotations and citations omitted) ("A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition meets or equals the listed impairments."). The claimant has the burden of demonstrating that all of the criteria of a Listing are met. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986).

Here, Plaintiff specifically finds fault with the ALJ's "lack of any mention, consideration, analysis, and explanation" of Listing 1.02A.[6] (Docket Entry 11 at 9.) Listing 1.02A provides that:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

---

severe impairment should have been found at step two. In any event, any purported step two error is harmless given the presence of other identified severe impairments. *Young v. Astrue*, No. 1:09CV1008, 2013 WL 474787, at *10 (M.D.N.C. Feb. 7, 2013) (unpublished) ("Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation.") (internal quotations and citations omitted); *see also Garofolo*, 2016 WL 1092650, at *4 ("[A]ny step two error as to consideration of these impairments is harmless given that the ALJ identified other severe impairments at step two and properly considered all impairments, both severe and non-severe, in formulating Plaintiff's RFC assessment.") (citations omitted).

[6] The ALJ did discuss another Listing in his decision, Listing 1.04. (Tr. 23.)

10

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.02. Listing 1.02A also requires a finding of an "inability to ambulate effectively".[7] *Id.* A duty of an ALJ includes identifying "relevant listed impairments," and "[comparing] each of the listed criteria to the evidence of [a claimant's] symptoms." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The duty to identify relevant listed impairments is triggered when there is "'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments . . . ." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D. Md. 1999) (quoting *Cook*, 783 F.2d at 1172-73); *see, e.g., Martin v. Colvin*, No. 1:11CV408, 2014 WL 4114207, at *4 (M.D.N.C. Aug. 20, 2014); *Drane v. Colvin*, No. 1:10CV901, 2014 WL 408753, at *4 (M.D.N.C. Feb. 3, 2014); *see also Morgan v. Colvin*, No. 7:13-CV-279-BO, 2014 WL 6473525, at *2 (E.D.N.C. Nov. 18, 2014)

---

[7] Effective ambulation is defined in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b):

> Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . .
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

11

("The ALJ's failure to consider [the] Listing . . . in this instance, where there is obviously evidence that may support the listing, is clear error."). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Ketcher*, 68 F. Supp. 2d at 645.

Here, Plaintiff's brief fails to point to any medical findings demonstrating that his impairments equal or meet all the criteria of Listing 1.02A, nor does the Court find ample evidence sufficient enough to trigger the ALJ's duty to discuss such Listing.[8] Thus, Plaintiff's argument fails. *Clansy v. Comm'r of Soc. Sec.*, No. SAG-15-0106, 2015 WL 6152253, at *2 (D. Md. Oct. 16, 2015) (unpublished) (finding several requirements of a Listing "not present on the record . . . thus no ample evidence exists to mandate an express discussion of the Listing").

Plaintiff's reliance primarily upon the holding in *Radford* is misplaced. 734 F.3d at 295. In *Radford*, the Fourth Circuit held that the ALJ's summary conclusion that the claimant did not meet a Listing was an "insufficient legal analysis" and "[a] full explanation by the ALJ [was] particularly important in [that] case because [the claimant's] medical record include[d] a fair amount of evidence supportive of his claim[.]" *Id.* (citation omitted). Thus, "the ALJ's failure to adequately explain his reasoning preclude[d] th[at] Court and the district court from undertaking a meaningful review of the finding that [the claimant] did not satisfy [the] Listing

---

[8] For example, no ample evidence exists regarding Plaintiff's "inability to ambulate effectively" triggering the ALJ's duty to discuss Listing 1.02A. *See e.g.,* Tr. 219, 221, 223, 267 (finding Plaintiff displayed normal or good gait); *see also* Tr. 201-05, 211-18 (evaluations of state agency physicians (which the ALJ gave great weight) specifically indicating that Plaintiff's impairments did not equal or meet Listing 1.02A).

12

. . . ." *Id.* at 296 (citations and quotations omitted). Here, this case is distinguishable in that Plaintiff has failed to bring forth any evidence supportive of this claim that he equaled or met all the requirements of Listing 1.02A. *Mills v. Colvin*, No. 5:13-CV-432-FL, 2014 WL 4055818, at *5 (E.D.N.C. Aug. 14, 2014) ("In this case . . . where there is no such probative evidence suggesting that plaintiff meets or equals Listing 1.02 or Listing 1.04, the ALJ was not required to engage in a full explanation of such listings.") Therefore, the ALJ's lack of discussion regarding Listing 1.02A does not warrant remand.

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 10) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

June 24, 2016
Durham, North Carolina